## JESSE S. WALTON v. COMPTON & STROTHER.

The 23d section of the act of the 27th of January, 1842, about executions, reads as follows: "If any sheriff or other officer shall fail to make return of any execution received by him on the day and at the place the same shall be made returnable, or shall neglect or fail to make a levy when in his power so to do, being thereto required by the plaintiff, or shall fail to advertise and offer for sale, as required by law, any property levied on by him, he shall be liable to pay to the plaintiff in execution the full amount of the debt, interest, and costs, to be recovered against such sheriff or other officer, and his sureties, by motion, in any court having jurisdiction thereof, by giving three days' notice of such motion." (Paschal's Dig., Art. 3796, Note 884.)

To warrant a recovery against a sheriff and his sureties by motion founded on the second clause of Art. 3796 of Paschal's Dig., it is necessary to prove that the execution was received by the sheriff; that, having the execution in his hands, he was required by the plaintiff in the execution to make a levy by virtue of it at any time when it was in his power to do so, and that he failed or neglected to make such levy. (Paschal's Dig., Art. 3796, Note 884.)

On the trial of a motion against a sheriff and his sureties for the failure of the sheriff to make a levy of an execution, it appeared that the sheriff, having in his hands the execution in question, held in his possession, by virtue of the levy of another writ, property of the defendant in execution, and that before sale under such levy he was instructed to levy the execution in question upon the surplus which the property should, sell for over and above the amount required to satisfy the writ levied upon it. On the sale the property was struck off at a sum more than sufficient to satisfy both executions, but the purchaser only paid to the sheriff the amount of the execution under which the levy and sale were made, and for the excess of his bid above that amount he tendered to the sheriff the receipt of the defendant in execution. It is contended that the sheriff and his sureties are not liable on the motion, for the reasons that he was instructed to levy the execution in question, not upon the property, but upon the surplus proceeds of the property when realized on the sale by virtue of the writ levied upon it: that no such surplus proceeds reached the hands of the sheriff, they being released to the purchaser by the defendant in execution, and that the sheriff held no lien enabling him to control the proceeds above the amount required to satisfy the writ by virtue of which the levy and sale were made. But *held,* that this defense is not tenable; that the sheriff, by virtue of his levy and sale, had a right to require payment to himself of the entire amount of the bid, and should, in default of such payment, have rejected the bid and re-sold the property; that the defendant in execution

had no right to control any portion of the proceeds of the sale until all executions against him in the sheriff's hands were satisfied; and, therefore, that the transfer or release by the defendant in execution to the purchaser of the surplus of the proceeds, over and above the amount of the execution actually levied on the property, by means of which transfer the surplus did not come to the sheriff's hands, affords to the sheriff and his sureties no defense against the motion.

The surplus required to be paid over to defendants in execution by the 6th section of the act is the excess of the proceeds of the sale after satisfying all the executions against him which are in the hands of the sheriff, and this excess is all of the proceeds which the defendant in execution has a right to control. (Paschal's Dig. Art. 3777.)

This 6th section introduced no new rule of law, but is simply declaratory of the antecedent law, prescribing, that when a sheriff holds an execution against a party, and money of that party comes to his hands, it is his duty to apply the money in satisfaction of the execution, and in such case no levy is necessary. (Paschal's Dig., Art. 3777.)

Under the circumstances of this case, it is *held*, that the sheriff was put upon inquiry equivalent to notice of the device resorted to by the defendant in execution and the purchaser to defeat, by means of the receipt given by the former to the latter, the application to the subsisting execution of the surplus proceeds of the sale. But even if the receipt or transfer had been given to a purchaser in good faith, for value, and without notice of any other execution than that under which the sale was made, this court intimates, but does not decide, that the rights of the execution creditors to the surplus would in this case be superior to those of even such a *bona fide* assignee.

ERROR from Navarro. The case was tried before Hon. JOHN GREGG, one of the district judges.

This was a motion entered at the fall term, 1858, of the District Court of Navarro county, by Compton & Strother, the defendants in error, against the plaintiff in error, who was the sheriff of the same county, and the sureties on his official bond.

The facts are substantially shown in the opinion of the court. The sheriff, under another execution, had sold the property for enough to satisfy the plaintiff's execution; but, instead of exacting the money, he accepted receipts.

The errors assigned were, in substance, that the court below erred in rendering judgment on the motion against the plaintiff in error and his sureties.

*William Croft*, for plaintiff in error.—The statement of facts shows, that an execution in favor of John C. Wells, for $259 and costs, against C. J. C. Lockhart, was in the hands of Walton, as sheriff, under which he had levied upon a negro slave, Coleman; that afterwards the sheriff was instructed to levy upon the surplus arising from the sale of said negro, and to apply it to the satisfaction of an execution in favor of Compton & Strother.  An indemnifying bond was also tendered, the amount of which is not stated, but witness " did not recollect certainly whether the bond was tendered before or after the sale, but it was about two o'clock on the day of sale, and right there where the sale took place."  The same witness, A. Beaton, attorney for Compton & Strother, states, " that he had no recollection of seeing any money in the hands of Walton on the day of sale;" he " did not know whose the negro was, but he was levied on as Lockhart's."

The sale took place, and the negro was knocked off and delivered to John Stewart, who tendered the amount due on the execution to Walton to the sheriff, and showed him a receipt signed by the defendant in the execution for the balance or overplus.

It is contended by defendants in error, that it was the duty of the sheriff to re-sell the negro forthwith, or re-advertise and sell under the Wells execution.  It is respectfully submitted, that this is a very shallow and untenable position, for the reason, that when the tender was made the execution was satisfied, whether the sheriff received it or not, and it would have been beyond the power of the sheriff to re-sell the property merely because the overplus was not tendered or paid, for he had no lien on the overplus, and the execution of Wells gave him no authority to collect more upon it than it called for.  Compton & Strother had nothing to do with the Wells execution.  They could not control it nor a levy under it.  They had no lien on the negro.  They had refused, or at least failed, to levy their

execution upon him.   As their attorney says in effect in
his testimony, they did not know whether the negro was
subject to their execution or not.   They would not incur
any responsibility by levying upon the negro, least of all
by giving the sheriff an indemnifying bond to levy upon
him.

It is questionable whether they had any right to point
out a levy under their execution.   They did not instruct
the sheriff to show their execution to the defendant.   It is
not in evidence that the defendant in their execution knew
of its issuance.   He had not been applied to for a levy;
he had not failed or refused to point out property; and
until he was in default, they had no right without his
knowledge or consent to point out his money or property
for a levy.

If the money had gone into the sheriff's hands, he would
have been compelled to pay it over to the defendant, his
agent or attorney.   (O. & W. Dig., Art. 861.)   The de-
fendant certainly had an equal right with the sheriff to
receive the surplus.

It is respectfully submitted, that no lien could attach to
the surplus which would prevent the sheriff from paying
it over to the defendant in execution, unless an execution
had, prior to the sale, been levied upon the property to be
sold.

An execution is not a lien on personal property.   (Mer-
cein v. Burton, 17 Tex., 207.)

No brief for the defendants in error furnished to the
*Reporter.*

COKE, J.—This is an action against the plaintiff in error
as sheriff and the sureties on his official bond for failing
to make a levy of an execution for $269 20 and costs in
favor of the defendants in error against one Lockhart,
issued from the District Court of Navarro county, and

placed in his hands, and for failing to pay over money alleged to be collected by virtue of said execution, brought under Arts. 865 and 872, O. & W. Dig.; [Paschal's Dig., Arts. 3781, 3796, Notes 872, 884.] On the trial the defendants in error abandoned their claim for damages under Art. 865. The case was submitted to the court without the intervention of a jury, and judgment was rendered for the defendants in error for the amount of principal and interest of the said execution.

Art. 872 of the statute provides,

"If any sheriff or other officer shall fail to make return of any execution received by him on the day and at the place the same shall be returnable, or shall neglect or fail to make a levy when in his power so to do, being thereto required by the plaintiff, * * * * he shall be liable to pay to the plaintiff in execution the full amount of the debt, interest, and costs, to be recovered against such sheriff or other officer and his sureties by motion in any court having jurisdiction thereof, by giving three days' notice of such motion." (Paschal's Dig., Art. 3796, Note 884.)

In order to entitle the defendants in error to recover under this clause of the statute, it was necessary for them to establish by proof that the execution in their favor against Lockhart was received by the appellant, and that, while in his hands, he was required by them to make a levy by virtue of it at a time when it was in his power to do so, and that he failed and neglected to do so. We are of opinion that all these facts are clearly and satisfactorily established by the proof in this case. That the execution came into his hands is not controverted by the appellant.

His return upon the execution shows that he made no levy by virtue of it, nor is it contended that he made a levy under it. His return on the Wells execution against the same defendant, Lockhart, which came to his hands on

the same day that he received the execution in favor of defendant in error, and the testimony of the witness, Beaton, both show that he had in his hands property of said Lockhart, levied upon by virtue of the Wells execution, estimated in his return to be worth $1,000, and which actually sold on the block for $905, nearly or quite twice the amount due upon both executions; and the testimony of Beaton proves that while this property was in appellants' hands, and it was in his power to make a levy upon it, he, as attorney of the defendant in error, instructed and required him to make a levy.

But it is insisted in behalf of the plaintiff in error that he was not instructed to levy on the negro, but that the instruction was to levy on the surplus proceeds of the sale of the negro after satisfying the Wells execution, which surplus he says never came to his hands, and that he held no lien on it enabling him to control it.

There is nothing in this argument to relieve the appellant from the conclusions we have already drawn from the proof in this case. By virtue of his levy under the Wells execution he was possessed of the property; it had not been replevied; he had a superior right against the world to its possession. When the sale was made, he had a right to demand and receive the amount bid. The defendant in execution had no right to control any portion of the proceeds of the sale until the demands of the law had been satisfied. The execution of the defendants in error was in the appellant's hands for enforcement and satisfaction; he had been required by defendants in error to levy it on the proceeds of the sale of the negro; and they had given him a bond, which he had accepted, to indemnify him for so doing.

Art. 861, O. &. W. Dig., provides, that "If on the sale of the property more money is received than is sufficient to pay the amount of the execution or executions in the hands of the sheriff or other officer, the surplus shall be

immediately paid over to the defendant, his agent or attorney." (Paschal's Dig., Art. 3777.)

What is the surplus which, under this clause of the statute, must be paid over to the defendant in execution? Most clearly that amount of the proceeds of the sale left after satisfying all the executions in the hands of the sheriff against him. No more and no less. This excess is all the defendants in execution had a right to receive or to control. This statute has not introduced a new rule of law on this subject. It is only declaratory of what the law was before its enactment. It was the law before that statute was enacted, as it is now, that when a sheriff holds an execution against a party, and money belonging to that party comes to his hands, it is his duty to make application of it to the satisfaction of the execution. No levy is necessary. (Lynch v. Hanahan, 9 Rich., 191; Hamilton v. Ward 4 Tex., 356.)

It matters not that the money did not in fact come to the hands of the plaintiff in error; it was his own fault that it did not. It was his right and duty to demand payment of the amount of the bid, and if it were not paid, to refuse the bid and re-sell the property. (Paschal's Dig., Art. 3787, Note 877; O. & W. Dig., Art. 870.)

The execution being in the hands of plaintiff in error, property sufficient to satisfy it being in his hands, and it being apparently in his power to make the levy demanded and the money on it, and he having failed to do it, the case is made out against him. The burden is upon him to sustain by proof the defense which he sets up in avoidance of the liability thus fixed *prima facie* upon him. He must show that the levy demanded by the defendants in error, and the amount due on their execution, which he agreed, by accepting their bond of indemnity, to make, could not, by a diligent exercise of the authority vested in him, be made. This the plaintiff in error has not done. His defense amounts, in substance, to this, that Lockhart,

the defendant in execution, transferred the excess of the
proceeds of the sale of the negro, over and above the
amount necessary to satisfy the Wells execution, to Stew-
art, the purchaser, or rather that he gave him a receipt for
it, by reason of which said excess did not come into his
hands, and that he therefore could not levy on it.   If this
transaction between Lockhart and Stewart had been fair
and honest, and made in good faith, with no intent to
hinder or delay the creditors of Lockhart in the collection
of their debts, although Stewart may have had no actual
notice of the execution of defendants in error being in the
sheriff's hands, we are strongly inclined to the opinion,
that under the circumstances of this case the rights of the
defendants in error to enough of the money in question to
satisfy their execution would have been superior to those
of Stewart, the assignee, and that consequently the defense
relied on would even in that case be insufficient; but a con-
sideration of that question is waived, as unnecessary to a
disposal of this case.

The testimony abundantly proves, that this receipt or
transfer was given without consideration, and that the
transaction was a mere sham, gotten up for the sole pur-
pose of hindering or defeating the enforcement of the exe-
cution in favor of defendants in error on this property, and
that it was thrown aside and disregarded as soon as it was
supposed that object had been accomplished.

This fraudulent and void transaction, it must be admit-
ted, could not affect the rights of the defendants in error,
nor the duties of the plaintiff in error, and was no obstacle
in the way of an enforcement of the execution.   The plain-
tiff in error, although indemnified, refused to act in oppo-
sition to it, regardless of the demand and the clear rights
of the defendants in error.   He elected to regard and
respect it as binding and valid, and thereby took upon
himself the burden of proving it to be so, and of showing
that no damage resulted to defendants in error from his

failure to act in compliance with their demand. He has wholly failed to show this. He stands upon the record convicted of a gross violation of duty, without defense or excuse, for which the judgment of the court below is a just penalty. (Miller v. Corn, 5 Barr, 294.)

It is a heavy draft upon our credulity to be asked to believe that the plaintiff in error was ignorant of the fraudulent character of this transaction between Lockhart and Stewart at the time it occurred. It is said, that whatever is sufficient to put a party upon inquiry is sufficient to charge such party with notice. (Briscoe v. Bronaugh, 1 Tex., 326; Parks v. Willard, Ib., 350.)

This pretended transfer was made at the very time when the property was about being subjected to the operation of an execution in favor of defendant in error. Plaintiff in error in a few days after returned the execution unsatisfied, "no property being found." It had been in his hands nearly five months and no levy, thus indicating the probable insolvency of Lockhart. These facts are strongly suggestive of fraud, and sufficient to put a prudent man upon inquiry. (Green v. Banker, 24 Tex., 518; Briscoe v. Bronaugh, 1 Tex., 326.)

A judgment would be of little value if it could be hindered in execution with impunity by the frivolous pretenses and sham and fraudulent devices resorted to for that purpose in this case.

There is no error in the judgment, and it is

AFFIRMED.