JOHN McCLANE v. WM. L. ROGERS.

1. SHERIFF. Under the Constitution (Art. 5, Sec. 21), where a sheriff is interested, process must be executed by a constable ; and no such officer can exist as a "special sheriff" appointed by the court to execute all necessary process which may issue in a case, but such defect must be taken *in limine,* by motion to quash citation and service.

2. PREFERMENT BY DEBTOR—ASSIGNMENT OF JUDGMENT. If there was a valid transfer of a judgment and notice thereof given to the sheriff before its collection, without the necessary steps having been taken to give a preference to any other party, the money when collected on such judgment would belong to the assignee.

3. LIABILITY OF SHERIFF FOR MONEY COLLECTED. If the sheriff, after notice of assignment of a judgment, voluntarily ignores the rights of the assignee and appropriates the money to other parties who have executions in his hands against the plaintiff, he does so at the peril of having to account to the assignee.

4. SHERIFF'S RETURN ON EXECUTION. That the sheriff has returned such executions against the plaintiff in execution satisfied, in no way affects the rights of the assignee of such judgment.

5. INSTRUCTIONS TO JURY. Where an improper charge could not possibly work an injury to the party complaining of it, it is not a ground for reversal on appeal.

APPEAL from Nueces. Tried below before Hon. T. C. Barden.

W. L. Rogers, Oct. 11th, 1872, sued John McClane, alleging that on 28th Feb., 1872, one P. H. McManigle obtained judg

ment against Richard King for four hundred dollars and sixty cents, and twenty-nine dollars and seventy cents costs of suit, in District Court of Nueces county; that on 16th March, 1872, said McManigle for value transferred said judgment to plaintiff (Rogers), of which transfer on April 8, 1872, McClane was notified ; that on June 19, 1872, he received from King the sum of four hundred and forty-six dollars, to be applied to the payment of said judgment, to the said McManigle or his assignee, whereby McClane became liable to pay said money to plaintiff; that plaintiff made demand of McClane of said money, etc.

In the record follows an application by plaintiff, Rogers, for the appointment of a " special sheriff " to serve process in the suit, it being against the sheriff, etc.

Upon this application the court appears to have made an order appointing one Peter Benson special sheriff, and upon his giving bond authorizing him " to execute all necessary process " which may be issued in this cause."

Benson gave bond and took the oath of office under the above appointment.

The citations and service are not copied in the transcript, nor was the service of citation objected to; but general and special demurrers were filed and at a subsequent term he pleaded general denial, and specially that he was sheriff of Nueces county, and that the money collected of King was by defendant, as sheriff, received and appropriated to the satisfaction of several judgments and executions against McManigle, which executions were in defendant's hands as sheriff at the time the money was collected of King, with the exception of a small balance, which he had deposited with the clerk of the District Court of Nueces county, from which the said executions had issued.  Among the executions so in McClane's hands was one in favor of J. B. Gentry & Son against McManigle.

(Gentry & Son intervened and adopted so far as applicable the answer of McClane).  McClane further answering denied the validity of the assignment by McManigle to Rogers,

charging fraud, and that at the time of the transfer McManigle was insolvent and that Rogers knew of his insolvency.

On the trial it was admitted that McManigle had obtained judgment against King as alleged in the petition. McManigle testified that he had recovered the judgment against King and immediately thereafter assigned it to Rogers by an assignment in writing; that at the time witness was owing Rogers some two thousand dollars; this written assignment was objected to by Mr. McCampbell who was attorney for witness in the case *v.* King, because it made no provision for the payment of his fee, which amounted to sixty dollars, and witness then made another assignment which is the one filed in the case; the first assignment recited, as a consideration, the full amount of the judgment; the substituted one, three hundred and forty dollars, so as to allow McCampbell his fees. Witness did not know that McClane was notified of this assignment at the June term of Nueces court; witness, in a conversation with Mc-Clane, told him that he (witness) had assigned the judgment to Rogers and had no interest in it; that at the time of the assignment witness did not owe a dollar to any one except Rogers.

On cross-examination witness admitted that he was the same McManigle against whom the sheriff had unsatisfied executions, and one of the defendants in the case of Gentry & Son *v.* Jack Sands & Co.

Re-examined. Gentry & Son were indebted to witness three dollars and forty cents. They had a judgment against Jack Sands & Co., but witness was not a member of the firm of Sands & Co., against whom the judgment was rendered; that he was not in debt and had plenty of property.

The assignment of the judgment was then read, and Rogers, plaintiff, testified that immediately after the rendition of the judgment of McManigle *v.* King, witness bought it, paid valuable consideration for it, that is, McM. was owing witness. The written assignment read in evidence (bearing date March 26, 1872), was read to McClane directly after it was made.

Witness at the time asked McClane "if he would pay over the "money," McClane said, "That is all right, he would pay over "the money whenever he collected it from King;" that the transaction between him and McManigle was in good faith, and in payment of that much of his indebtedness to witness.

R. Holbein, for plaintiff, testified that he was agent, bookkeeper, and attorney, in fact for King; that on the 14th of June, 1872, witness gave or lent McClane a draft for four hundred and forty six dollars, to cover the judgment, interest, and cost in McManigle v. King. Witness is cashier and has general management of King's business; the draft was in favor of McClane.

On cross-examination Holbein stated that he knew that King had authorized McClane to satisfy the judgment;—this authority was given by King in a conversation between King and McClane, some months previous to June 14, 1872, when the execution in McManigle v. King was in the hands of McClane, as Sheriff; that King had property in Nueces county, subject to execution to near half a million.

The testimony for defense sufficiently appears in the opinion.

The 4th instruction assigned as error and noticed in the opinion is as follows;

"The jury is instructed that there is no evidence of fraud "impeaching the good faith of the transfer from McManigle "to Rogers, and in the absence of such proof they will not con- "sider, in making their verdict, any of the evidence showing a "payment to the attorney of the intervenors."

Verdict and judgment was rendered for the amount claimed in the petition; but plaintiff remitted sixty dollars, which sum McClane had paid to McCampbell, attorney of McManigle, in the suit against King.

McClane and the the intervenors appealed.

*J. S. Givens,* for appellant.

MOORE, J. The appointment of a "special sheriff," to execute all process in the case, was certainly improper and unauthorized. By Section 21st, of Article 5th, of the Constitution, it is provided that the duties of the sheriff in all cases, where such duties had previously devolved upon the coroner, should in future be performed by a constable. The execution of all process, of whatever nature the same might be, in all cases whenever the sheriff was a party, had theretofore unquestionably devolved upon the coroner. (Paschal's Digest, Art. 1014.)

There being no color of law for the appointment of a "special sheriff," it follows that service of process by him was invalid, and without warrant of law. If, therefore, the citation upon appellant was in fact served in this way, there was error in the refusal of the court to quash it. But although it may be inferred that the citation was served by the party appointed by the court, to execute all process in the case, it does not directly so appear from the record. It has been too often said by the court to require repetition, that the party complaining of the action of the court below, must plainly show in the record, the error of which he complains. A judgment will not be reversed unless error is clearly and distinctly shown. It is not sufficient that the court probably erred in the matter complained of.

When money comes into the sheriff's hands, while he holds a valid execution against the party to whom it belongs, he may, no doubt, apply it in satisfaction of such execution. The mere lodging an execution with the sheriff gives the plaintiff in execution no preference, or lien upon personal property, or right to choses in action of the defendant in execution. No arrangement or understanding can be made between the plaintiff in execution and the sheriff, in anticipation of money coming into his hands, under an execution which he holds in favor of the debtor against another party by which such application can be made in advance of the receipt of the money by the sheriff; or any preference in favor of the plaintiff in execution be made

to attach to it. The judgment in favor of such debtor is subject to his control, and he may deal with, and dispose of it in any legitimate way, and for any lawful or proper purpose to which he may see fit to apply it, so long as it is *in fieri*, unless some one has invoked the aid of judicial process to stay or prevent it. If his creditors are entitled and desire to do so, they may, of course, by a proper proceeding for this purpose, previous to its collection or appropriation by the debtor, have the money, to which he is entitled under the judgment, applied to the payment of their debts. But unquestionably this cannot be done by merely placing an execution in the hands of the sheriff in anticipation of his collection of money under a judgment in favor of the debtor against another party.

As the debtor may legitimately give preference to one creditor over another, the plaintiff in execution would have no ground of complaint by reason of a *bona fide* appropriation of the judgment by his debtor, in payment of some other valid demand against him. If there was a valid and *bona fide* transfer and assignment of the judgment, and notice thereof given the sheriff, before its collection, and without the necessary steps having been taken to give a preference to any other party, the money, when collected, would belong, not to the plaintiff in the judgment, but to his assignee. And the sheriff, under such circumstances, could not appropriate it to the satisfaction of executions in his hands against the assignor. If the sheriff applied the money so collected to other executions, and it passed from his control, or the rights of other creditors had in any way attached before receiving notice of the assignment, he could not be held to account for it by such assignee. But if, after notice of the assignment, the sheriff voluntarily, and at his own instance, ignores the rights of the assignee of the judgment, and pays the money collected to other parties merely because executions in their favor against the plaintiff in such judgment are lodged in his hands, he does this at the peril of having to account to the assignee of the judgment, unless he can show that the claim of the assignee is unfounded, or that

the parties to whom he has paid it has the superior and better right to it.

The fact of the sheriff's having returned the executions in favor of creditors as satisfied by the application of money so collected, is of no consequence. The assignee's claim to it depends upon mattes antecedent to such returns. Whatever may be the consequence and effect of such returns as between the sheriff and the plaintiffs in these executions, the assignee of the judgment, if notice of the assignment is given previous to the receipt of the money by the sheriff, is certainly neither bound or affected by them.

The fourth instruction given the jury, at the instance of appellee, is no doubt subject to objection as a charge by the court upon the weight of evidence. And if there was any reason to suppose the jury might have reached any other conclusion than that which they did, if this instruction had been refused, the judgment should be reversed. It is unquestionably improper for the court to instruct the jury that the evidence does or does not establish any particular fact or proposition in the case. However plain and manifest the evidence in it may be, the jury should be left to ascertain and determine it for themselves, uninfluenced by the opinion of the court. Still, if no other conclusion can be legitimately deduced from the facts, than that stated by the court, the charge would be immaterial and could work no injury, and would therefore afford no ground for the reversal of the judgment. This, in our opinion, is the fact in this case, and although the instruction asked was improper, no injury to appellants has or could have resulted from it, and therefore the judgment should not be reversed for the error of the court in giving it.

There being no error apparent in the record, as presented to us, for which the judgment should be reversed, it is affirmed.

Affirmed.