SHIPMAN et al. v. WRIGHT. (No. 10163.)

Court of Civil Appeals of Texas. Dallas. Jan. 28, 1928.

Rehearing Denied March 3, 1928.

1. Building and loan associations ⬅1—Business organized under statute to make home loans under supervision of state officer held not against public policy and its contracts enforceable.

Business organized for purpose of making loans for building of homes, under valid statutory enactment, subject to supervision of state department of insurance and banking, making contracts which were subject to his supervision by law giving company right to exist, held not against public policy, and contracts issued in pursuance of such business were valid.

2. Building and loan associations ⬅33(5)—Contracts for loans issued by co-operative loan association held not usurious.

In action by receiver of corporation organized for purpose of making loans, where de-

fendant had contracts for loans which were not eligible for loans and in order to obtain immediate loans defendants purchased eligible contracts on which they based application for loan, and paid, in addition to amount that represented monthly dues on contracts sum referred to as bonus, held that loans were not usurious even though corporation and not third party was real party to sales of contracts.

3. Usury ⬅113—Where contract on face provides for legal interest, burden is on party pleading usury to show there existed agreement charging usury.

Where contract on its face provides for payment of no more than legal interest, burden is on party pleading usury to show that there existed some agreement, devise, or subterfuge to charge usury and that both parties contemplated this purpose.

4. Appeal and error ⬅1043(7)—Denying continuance to enable defendants to procure checks representing sum they claimed credit for, if error, held harmless, where such amount was credited.

In action upon notes and to foreclose lien of trust deed, where defendants had arranged for conference with their attorney, but received wire from him to effect that he was sick, and they presented application for continuance based on ground of attorney's illness, and that they had previously turned over to him large amount of correspondence and canceled checks showing they were entitled to credit, and after endeavoring to locate papers, presented second application for continuance, and it appeared that defendants received credit for amount included in checks to which they were entitled, held that overruling of continuance, if error, was harmless.

5. Appeal and error ⬅843(2)—Sustaining exception to plea which by adjustment between parties had become moot held not error.

In action against defendants on notes and to foreclose trust deed, where it was contended that court erred in sustaining exception to plea in which they alleged they were induced by false and fraudulent representations to purchase and make payments on contracts for loans and in rejecting evidence to establish this plea, held that, matter having been adjusted prior to institution of suit, incident was effectually closed, and issue as to fraud represented by pleading became moot.

6. Building and loan associations ⬅42(10)—In action by receiver of co-operative loan corporation, allowance of 6 per cent. interest on amount due on notes from and after date of receivership held not error.

In action by receiver for amount due on notes to co-operative loan corporation, allowance of interest upon amount due at rate of 6 per cent. from and after date of receivership held not error, since where co-operative concern becomes insolvent, its orginal scheme defeated, and its business brought to sudden stop, liquidation of its affairs is only alternative, and to accomplish this all outstanding debts must be paid at once with legal interest, as distinguished from rates provided in contracts, though debts are not yet matured.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Appeal and error ⬤═►1060(1)—Permitting counsel to read petition filed in one of cases in consolidated suit in lieu of missing original over objection that motion for substitution was not made before trial, if error, held harmless (Rev. St. 1925, art. 2289).**

In action by receiver of co-operative loan corporation for amounts due on loans, permitting counsel for plaintiff during progress of trial to read to jury copy of petition filed in one of three cases in consolidated suit in lieu of original, where later during progress of trial plaintiffs filed motion to substitute copy for missing original, *held* court did not err in permitting use of copy and substituting same for original, but, if error, it was harmless, since no substantial right was affected. Rev. St. 1925, art. 2289, being applicable only where papers or records are lost or destroyed.

**8. Judgment ⬤═►303—Judgment applying surplus from one sale to make up deficiency from other in separate actions on notes held subject to correction to alleviate danger of confusion (Rev. St. 1925, arts. 3783, 3827).**

In separate actions on notes which were consolidated for purpose of trial, where separate money judgments were rendered and a sale of particular property commanded for satisfaction thereof and separate executions conforming to Rev. St. 1925, art. 3783, directed requiring that excess be applied to deficiency left remaining on sale of property in other suits, *held* that nothing was added to effectiveness of article 3827, but to avoid confusion which might arise from acquisition of homestead rights by reason of superfluous provision for disposition of excess, judgment was corrected, and all provisions for application of surplus from one sale to satisfaction of deficiency on another were expunged.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suits by G. G. Wright, receiver of the United Home Builders of America, against V. E. and H. T. Shipman. Suits were consolidated, and from a judgment for plaintiff on an instructed verdict, defendants appeal. Corrected and affirmed.

See, also, 279 S. W. 296; 288 S. W. 281.

Niblo & Dodd, of Dallas, for appellants. John W. Pope, of Dallas, for appellee.

LOONEY, J. G. G. Wright, as receiver of United Home Builders of America, brought three separate actions against V. E. and H. T. Shipman, each predicated on a promissory note and to foreclose the lien of a trust deed on separate parcels of real estate given to secure the payment of the notes respectively. The suits were consolidated, and, on trial, judgment was rendered for plaintiff on an instructed verdict, from which defendants appealed.

The Home Builders was a co-operative loan association, founded upon a declaration of trust and operated under the supervision of the state department of insurance and bank-

ing. It issued and sold to its members a contract, known as "class A, or 3 per cent. loan home purchasing contracts." It was forbidden by law to make loans on real estate, except upon contracts upon which there had been as much as $150 paid in monthly dues and after the contract had been reached for a loan in its numerical order.

The provisions of the contract pertinent to this inquiry are these: The member agreed to pay a membership fee of $10 and $10 per month on each $1,000 face value contract until a loan should be secured, and thereafter $1 per month on each $100 of the loan, plus 3 per cent. interest, computed annually upon the balance remaining unpaid each year, until the full amount of the principal and interest should be paid. A member was entitled to a real estate loan out of the loan and trust fund equal to the face value of his contract, provided when reached for a loan in its numerical order 15 per cent. of the face value of the contract had been paid and sufficient funds for the loan had been accumulated. However, if sufficient funds were accumulated prior to the payment of the 15 per cent., the member was privileged to advance the difference and immediately secure a loan. Should a member not desire a loan when notified that one was ready under the contract, or in lieu of any other option afforded by the contract, he could surrender the same and receive all monthly dues paid, and, in addition, $150 as a bonus or profits, or, if he preferred, he could sell or assign the contract to any other person or persons; it was also provided that a member could obtain a cash surrender settlement where the contract had been in good standing for 24 months; also, the full face value of the contract would be paid, together with its pro rata share of all interest earnings from contracts of that class, where payment of monthly installments had been made for 100 months consecutively. The contract provided that no officer, agent, attorney, solicitor, or employee had authority to make binding promises, representations or statements otherwise than authorized by the contract, nor to promise a loan at any particular time. It was also provided that if and when a real estate loan was made, the member would surrender the contract and take credit on the loan for the amount of all monthly installments previously paid.

[1] 1. Appellants contend that the business pursued by Home Builders was that of a lottery, was against public policy, and, as the notes and trust deeds sued upon were executed in furtherance of this scheme, the same were void and unenforceable.

In the case of Barlow v. Wright, 279 S. W. 593, 596, in which the Supreme Court refused a writ of error, this court was confronted with this identical question. We then had under review the scheme or plan of business

pursued by Home Builders and contracts identical with those involved here. In disposing of the question, Associate Justice Vaughan, for this court, said:

"The existence of the Home Builders was authorized by a valid statutory enactment. The contracts issued by the Home Builders were approved by a public official of the state, and subject to his supervision by the law giving the company a right to exist. Therefore it cannot be said that such contracts are contrary to public policy merely because the business may have been unsuccessful, or because through the gross mismanagement of its trustees it was necessary to place it in the hands of a receiver for the protection of its contract holders."

In unison with this holding, we overrule all assignments relating to this contention.

2. Appellants also urge that the business pursued by Home Builders was a scheme designed to charge and collect usurious interest, and for this reason the contracts sued upon are void and unenforceable, and, further, that the evidence was sufficient to raise the issue of usury as to the contracts in suit, and therefore the court erred in directing a verdict for plaintiff.

We do not believe it can be seriously insisted that a purposed scheme to collect usurious interest on loans made under contracts sold by Home Builders can be gathered from any of its provisions. Such construction would, in our opinion, be a distortion of its terms.

If, as appellants contend, the evidence was sufficient to present the issue of usury as to the notes in suit, the same arose, not from any inherent vice in the plan of business pursued, but from the fact that appellants, in the purchase of matured contracts on which they based applications for loans, paid, as part consideration, certain sums called "bonus money" in addition to the amount of monthly dues theretofore paid by former owners. The consideration paid by appellants for the contract, on which the $1,000 loan was based, included the amount of monthly dues paid by former owner, plus $65 bonus money; and for the five contracts on which they based applications for the $2,000 and the $3,000 loans they paid, in addition to monthly dues paid by former owners, the sum of $1,000, being a bonus of $200 on each of the five contracts.

[2] Appellants' insistence is that this bonus money was interest exacted and paid in advance for the loans, and that the evidence was sufficient to require the submission of that issue to the jury. It appears that appellants had owned, for at least 20 months, nine $1,000 face value contracts, on each of which they had paid a membership fee of $10, also the regular monthly dues of $10, but these contracts were not, according to their terms, eligible for loans. So, in order to obtain immediate loans, appellants purchased from J. E. Ivans, of Sherman, Tex., the six

eligible contracts on which they based applications and paid therefor, in addition to the amount that represented monthly dues theretofore paid, the sum of $1,065, referred to as bonus. Appellants obtained these contracts from Ivans, and paid him the full consideration therefor. It nowhere appears that Home Builders received any part of this consideration nor that Ivans was acting for it in making the sales.

The only circumstance that outcrops from which it could be surmised that Ivans, in selling the contracts, was representing Home Builders, is the fact that, at the time he was acting as their agent and district manager at Sherman with whom appellants negotiated the loans in question.

Each contract contained a provision that permitted a member to assign a contract in good standing to any person whomsoever, and we find nothing expressed or implied that would have prevented an agent of the association from owning, purchasing, or selling contracts.

The record further discloses that Home Builders, in settling with appellants after these loans were closed, paid them the full amount of same, deducted the amount of monthly dues previously paid on the contracts, and took their notes for the difference. This explains why appellants were paid more money upon each loan than the principal of the notes. As we fail to find in the record any substantial evidence showing or tending to show that Home Builders charged or received any sum for the loans, other than is shown by the face of the notes, which is less than 10 per cent. per annum, no usury could exist, and no issue of fact was presented justifying the submission of that issue to the jury.

[3] The rule seems to be that where, as in this case, the contract on its face provides for the payment of no more than legal interest, the burden is on the party pleading usury to show that there existed some agreement, device, or subterfuge to charge usury, and that both parties had this purpose in contemplation. Bank of U. S. v. Waggener, 9 Pet. 378, 399, 9 L. Ed. 163, 171; Henry v. Sansom, 2 Tex. Civ. App. 150, 21 S.W. 69. If, on the other hand, it could be said that the evidence sustained appellants' contention, that is, that Home Builders, and not Ivans, was the real party to the sales contracts and received the consideration therefor, the situation would not be materially changed.

In the case of Abilene Christian College v. G. G. Wright, Receiver, 1 S.W.(2d) 720, decided by the Court of Civil Appeals at El Paso on December 8, 1927, the court had under consideration a question of usury based on contracts and transactions in effect the same as those here involved. The college purchased the necessary number of contracts directly from or through Home Builders, and the consideration paid therefor was deducted

from the loan. In disposing of the question, the court, among other things, said:

"But it is insisted by appellant that, under section 5 of the contract, the Home Builders were obligated to the original holders of the 46 contracts to redeem the same if they did not want a loan. It contends 'that, when any contract holder surrenders his contract, and receives back from the company the amount of money which he had theretofore paid in, together with his bonus of $150, as guaranteed to him by section 5 of the contract, such contract was extinguished, and all rights under it were merged in the company, and the company could not thereafter give it any life or validity for any purpose;' that requiring appellant to repay the amounts so paid out was simply a subterfuge to evade the law of usury. But section 5 also authorizes the assignment of the contracts, and we see no reason why the Home Builders in making such payment could not do so for the account of one who desired to acquire the contracts as the basis of a loan rather than in redemption of the same.

"Nor do we see any reason why a surrendered contract could not be reissued to one who would pay in a lump sum the required number of payments rather than canceling the surrendered contract and issuing a new one. A contract thus reissued would be valid between the Home Builders and the party to whom it was reissued, though such procedure might infringe to some extent upon the loan privileges of other contract holders.

"Bearing in mind that these contracts were valid contracts authorized by law, and approved by the commissioner of insurance and banking, that ownership by appellant of the 46 matured contracts was a condition precedent to obtaining the loan, we see nothing in the transaction which would make the purchase price of the contracts an interest charge, and make the loan usurious.

"We are therefore of the opinion [that] there was no material issue of fact raised by the evidence, and the court did not err in giving the peremptory charge."

We therefore overrule all assignments and propositions relating to the question of usury.

[4] 3. Appellants assign error on the action of the court in overruling their application for a continuance.

Appellants resided in Delta county, and their attorney, Hon. B. B. Sturgeon, resided at Paris, in Lamar county. Appellants arranged for a conference with their attorney in Dallas for March 14th, as the cases were set for trial the following day, but on said date they received a wire from him to the effect that he was at Mineral Wells, sick, and unable to attend court. When the cases were called, appellants presented an application for continuance based on the ground that their attorney was absent on account of illness; that they had previously turned over to him a large amount of correspondence, consisting of canceled checks and other memoranda, showing that they were entitled to a credit of $2,020 paid to one J. E. Ivans, and checks showing other payments. On presentation the court passed the case until the 17th, with the suggestion that appellants endeavor to locate and obtain the missing papers. This they did, but were unsuccessful, and, on the cases being again called on March 17th, presented their second application for a continuance, setting up that they had been compelled, under the circumstances, to employ other attorneys to represent them who were not familiar with the case; in other respects, the application was substantially the same as the first, except it went more into details descriptive of the absent evidence, and alleged the diligence pursued to procure same.

It appears that on the trial of the case the check for $2,020 mentioned in the application was introduced in evidence. This represented the amount of the consideration appellants paid Ivans for five of the contracts on which the $2,000 and the $3,000 loans were based. Appellants received credit on these loans for the amount included in the check that represented the monthly dues paid by former owners of the contracts. The other part of the check, to wit, $1,000, represented the bonus of $200 per contract paid to Ivans.

It further appears that appellants were allowed all credits asked by them to which they were entitled. We are of the opinion, therefore, that the action of the court in overruling the application for continuance, if error at all, was harmless; hence this assignment is overruled.

[5] 4. Appellants further insist that the court erred in sustaining plaintiff's special exception to their plea in which they alleged that they were induced, by false and fraudulent representations, to purchase and make payments on nine contracts for approximately 20 months, and also erred in rejecting evidence offered by appellants to establish this plea.

We do not deem it necessary to discuss this proposition further than to say that it appears from the testimony of appellant V. E. Shipman, that this matter was adjusted between appellants and Home Builders, as they surrendered these contracts and accepted credit on the loans for their cash surrender value. Thus, by agreement of parties before the suits were instituted, the incident was effectually closed, and the issue as to fraud represented by the pleading became moot. We therefore overrule this contention.

[6] 5. Appellants also contend that the court erred in allowing interest on the amount due on the loans at the rate of 6 per cent. from and after the date of the receivership. The rule that seems to be recognized in this state is that where a co-operative concern, operating under a plan such as was employed by Home Builders, becomes insolvent, its original scheme defeated, and its business brought to a sudden stop, liquidation of its affairs is the only alternative. To accomplish this, all outstanding debts must be paid at once with legal interest, as distinguished

from the rate provided in the contracts, although the debts are not yet matured. This is necessary in order to accomplish the only thing left to be done—that is, to wind up the affairs of the association.

In the case of Park v. Kribs, 24 Tex. Civ. App. 650, 60 S. W. 905, 913, the question was whether, after insolvency and receivership, the receiver was entitled to recover attorney's fees provided in the contract of a borrowing member. In disposing of the question, the court said:

"By the insolvency of the association there was a premature abandonment of the contract. The terms of the contract contemplated that the loan should run five years. In proceedings of this nature, in winding up the business of an insolvent corporation, the assignee does not recover strictly upon the contract. He is entitled to recover the amount of the loan, with legal interest thereon. 4 Am. & Eng. Enc. Law (2d Ed.) p. 1081; Thomp. Bldg. Ass'ns, § 319."

To the same effect see People's, etc., Association v. McPhilamy, 81 Miss. 61, 32 So. 1001, 59 L. R. A. 743, 95 Am. St. Rep. 454; 9 Corpus Juris, pp. 981–983, § 118.

We, therefore, overrule all assignments relating to this contention.

[7] 6. Appellants complain of the action of the court in permitting counsel for plaintiff, during the progress of the trial, to read to the jury a copy of the petition filed in one of the three cases in the consolidated suit in lieu of the original, which was at the time missing from the files. The objection of appellants was, that the copy was not a court paper—that it had not been substituted for the missing pleading in the manner required by law. Later, and during the progress of the trial, plaintiffs filed a motion to substitute the copy for the missing original, and on the second day after the motion was filed the court heard and sustained same over appellants' objection.

Appellants make no contention that the copy substituted was not a correct copy of the original, nor do they show the deprivation of any substantial right by reason of the use of the copy under the circumstances; their objection being that the motion should have been made before beginning trial, and that they were entitled to three days' notice.

These proceedings took place in open court during the progress of the trial, and, as it seems, in the presence and with the full cognizance of the appellants and their attorneys. In appellants' second application for a continuance it was shown that the missing pleading was neither lost nor destroyed, but was in the custody of Hon. B. B. Sturgeon, who, on account of illness, was unable to attend court and produce the same.

Article 2289, Revised Statutes 1925, was not applicable, for the reason that it can only be invoked where papers or records are lost or destroyed.

The facts of this case bring it clearly within the rule announced by the San Antonio court in Laurenson v. Carrell (Tex. Civ. App.) 289 S. W. 1024.

We are of the opinion that the court did not err in permitting the use of the copy of the pleading and in substituting the same for the original under the circumstances, but, if error, it was harmless, as no substantial right of appellants was affected.

[8] 7. Appellants inveigh against provisions of the judgment that direct the officer executing orders of sale to apply any excess from the sale of property under one foreclosure to the satisfaction of a deficiency, if any, that may exist on sales under the other foreclosures.

As hereinbefore stated, suit was filed by plaintiff against the defendants on three separate notes and to foreclose trust deed liens on separate parcels of real estate. In the consolidated suit, personal judgment was rendered against appellants for $518.18 on one note, with a foreclosure of the lien on certain lots situated in the town of Pecan Gap, Delta county, Tex. This division of the judgment provides that, if the property shall sell for more than sufficient to satisfy this amount with interest, the officer executing the writ is thereupon directed to apply the excess to the payment of any deficiency left remaining on the sale of the property as ordered in the next paragraph. In the next paragraph, plaintiff is adjudged a recovery of $1,502.43 against appellants with foreclosure on certain other lots situated in Pecan Gap, with the provision that, if on the sale of this property there should exist an excess after satisfying the amount with interest, the officer conducting the sale is directed to apply the same to the payment of any amount left unsatisfied on the sale of property mentioned in the preceding or first paragraph. In the next paragraph, plaintiff was adjudged a recovery for $1,830.35, with foreclosure on certain lots of land in the town of Ben Franklin, Delta county, Tex. With reference to this, the judgment provides that if the property should sell for more than enough to satisfy this amount, with interest, and if the properties referred to in the two preceding paragraphs should not sell for enough to satisfy the amounts adjudged therein respectively, the officer conducting the sale is directed to apply this excess to the payment of any deficiency existing from the prior sales.

The judgment also directs that three separate and distinct orders of sale shall issue, which necessarily comprehend a separate and distinct sale under each foreclosure.

Appellants' contention under this assignment is:

"We rest this assignment upon the simple proposition that the judgment must be supported by proper pleadings. Defendants were not put upon any notice that plaintiff sought any such judgment. The manifest harm is that some of the property might have been impress-

ed with a homestead since the execution of the deeds of trust."

The provisions complained of add nothing to the judgment, as the procedure is identically the same prescribed by the statute in such a situation. As before observed, three separate money judgments were rendered. In each, sale of particular property was commanded for the satisfaction thereof. Separate executions were authorized directing, not only sales of particular property, but requiring the officer to satisfy any deficiency left after the sales out of property belonging to appellants subject to execution. Article 3783 (3729) (2338) (2281), Revised Statutes 1925.

By article 3827 (3778) (2388) (2328) Revised Statutes 1925, the officer conducting a sale under execution is directed to dispose of any surplus that may exist, as follows:

"If, on the sale of property, more money is received than is sufficient to pay the amount of the execution or executions in the hands of the officer, the surplus shall be immediately paid over to the defendant, his agent or attorney."

In the early case of Hamilton v. Ward, 4 Tex. 356, the Supreme Court held that money may be taken in execution the same as other property.

In Walton v. Compton, 28 Tex. 569, 575, Judge Coke, for the Supreme Court, in a case that arose under this statute, then article 861, O. & W. Digest, held that it was the duty of the sheriff to apply a surplus from one execution to the satisfaction of another against the same defendant; that the statute introduced no new rule of law, but was simply declaratory of the law aforetime. Also, see McClane v. Rogers, 42 Tex. 214, 218; Mann v. Kelsey, 71 Tex. 609, 614, 12 S. W. 43, 10 Am. St. Rep. 800; Deware v. Wichita, etc. Co., 17 Tex. Civ. App. 394, 43 S. W. 1047, 1048; Turner v. Gibson (Tex. Civ. App.) 152 S. W. 839, 841. Thus, it is obvious that the provisions of the judgment complained of add nothing to its effectiveness, as the statute authorizes this procedure in cases where the officer has in his hands two or more executions against the same defendant.

However, if homestead rights have been acquired in any of the lands since the liens of trust deeds attached, they would not be cut off by this statute. Therefore, to avoid possible confusion and litigation, by reason of these superfluous provisions, the judgment will be corrected, and all provisions for the application of a surplus from one sale to the satisfaction of a deficiency on another will be expunged, leaving the situation to be taken care of by the statute, subject to the rights of parties who may have acquired interests after the respective liens attached, and who, by reason thereof, would be entitled to any surplus left on sale of any of the properties.

We have carefully considered all assignments, and, finding no reversible error, the judgment of the court below will be corrected in the respects just mentioned and affirmed; but as this matter was not brought to the attention of the trial court, and an opportunity afforded for correction, the cost of appeal will be taxed against appellants.

Affirmed.