BARLOW et al. v. WRIGHT et al.  (No. 9706.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 19, 1925.)

**1. Building and loan associations ⚙➙3—Copartnership agreement held authorized by statute.**

Agreement creating copartnership, under which all persons who purchased home purchasing contracts through such copartnership became members thereof, and contracts sold by such copartnership, *held* authorized under Acts 34th Leg. (1915) 1st Called Sess., c. 5, § 2, as amended by Acts 35th Leg. (1918) 4th Called Sess. c. 45, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 1313½a).

**2. Building and loan associations ⚙➙2—Business transacted by copartnership in compliance with statute held not contrary to public policy.**

Where copartnership was organized and conducted business in conformity with Acts 34th Leg. (1915) 1st Called Sess., c. 5, § 2, as amended by Acts 35th Leg. (1918) 4th Called Sess. c. 45, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 1313½a), *held* that neither such copartnership nor business transacted by it could be held contrary to public policy.

**3. Contracts ⚙➙318—Court cannot restore a contract which has become valueless through its terms.**

Court cannot restore a contract which has become valueless through operation of its terms, which the parties have lawfully assumed to comply with.

**4. Building and loan associations ⚙➙2—Statute authorizing copartnership not unconstitutional.**

Acts 34th Leg. (1915) 1st Called Sess. c. 5, § 2, as amended by Acts 35th Leg. (1918) 4th Called Sess., c. 45, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 1313½a), authorizing copartnership created under declaration of trust *held* not unconstitutional.

**5. Building and loan associations ⚙➙2—Statute repealing act under which copartnership could be created, and providing for liquidation of companies created under act as repealed, held not to invalidate contracts theretofore made under repealed act.**

Acts 38th Leg. (1923), c. 157, repealing Acts 34th Leg. (1915) 1st Called Sess., c. 5, § 2, as amended by Acts 35th Leg. (1918) 4th Called Sess., c. 45, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 1313½a), under which copartnership could be created, and providing method of liquidation of companies created and existing under the acts so repealed, *held* not to invalidate contracts theretofore made under former statutes, nor to provide for liquidation in any way other than as contracts provided.

**6. Building and loan associations ⚙➙42(18)—Judgment allowing all contract holders to share pro rata in receivership assets of copartnership, regardless of number of payments made by respective contract holders, or whether terms of contracts had been complied with, held improper.**

Judgment allowing all contract holders to share pro rata in receivership assets of copartnership, all contract holders of which were members, created under Acts 34th Leg. (1915) 1st Called Sess., c. 5, § 2, as amended by Acts 35th Leg. (1918) Fourth Called Sess., c. 45, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 1313½a), regardless of number of payments made by respective contract holders or whether terms of contracts had been complied with, *held* improper, and only holders of contracts that had matured according to terms and provisions of such contract, holders in good standing of contracts not yet matured, and members whose contracts had matured, and who had received paid-up nonparticipating certificate in lieu of matured contract, were entitled to share in assets.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by A. A. Cocke against W. M. Webb and others, wherein G. G. Wright was appointed receiver of the United Home Builders of America. T. M. Barlow and others moved to amend the judgment adjudicating claims. From an order rendered on such motion, T. M. Barlow and others appeal. Reversed and remanded, with instructions.

Gresham, Willis & Freeman, of Dallas, for appellants.

John W. Pope, of Dallas, for appellees.

VAUGHAN, J. On the 25th day of January, 1923, the judge of the trial court, in the case of A. A. Cocke v. W. M. Webb et al., No. 42033–C, appointed G. G. Wright receiver of the United Home Builders of America, and said Wright qualified as such receiver in conformity with the requirements of law on the 26th day of January, 1923, and is now, and since the date of said order has been, such receiver, acting under the orders of said court.

The United Home Builders of America was a co-operative association, created under a declaration of trust dated January 2d, 1919, and operated thereunder until the month of May, 1920, at which time, under and by virtue of the Acts of 1915, 34th Leg. 1st Called Sess. c. 5, § 2, and as amended by Acts 1918, 35th Leg. 4th Called Sess. c. 45, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 1313½a), and particularly section 28 of said Acts of the 1st Called Sess. 34th Leg., went under the supervision of what was then the banking

and insurance department of Texas, and continued to operate under said department until the appointment of the receiver in said cause 42033-C. For the sake of brevity, the United Home Builders of America will from now on be referred to as the Home Builders.

During the time said Home Builders opererated under the supervision of the banking and insurance department, it deposited with the department approximately $1,250,000 in securities, represented by vendor's lien and deed of trust notes, being secured by real estate located in Texas and other states. The Home Builders did not issue and sell stock, save and except approximately $34,-000, and of that amount of stock all except about $4,000 was owned by the trustees, Cocke and Webb at first, and then Webb and Wm. Sacks, and such stock so issued did not at any time, as shown by the declaration of trust, participate in any of the earnings or revenues of said Home Builders; that the only revenue derived by virtue of said stock was at all times measured by the rate of interest upon loans made from the capital stock fund. The principal business of the Home Builders was selling what is designated as 3 per cent. home purchasing contracts, containing, among others, the following provisions:

Section 4, which provides for the creation and maintenance of a reserve fund for the purpose of building a permanent fund, provides that the reserve fund shall consist of, among other things, "all profits from contracts that have lapsed."

Section 6, which deals with loan options on matured contracts, as follows:

"This contract shall mature when a sum of money equal to its face value has accumulated in the loan or trust fund, and after all prior contracts of this class have been satisfied, and, in case all payments due under this contract have been paid, the member, or his heirs, shall be entitled to exercise his or their choice of options in this contract and if a loan is made, same shall be subject to the terms and provisions of sections 21 and 22 hereof and the surrender of this contract."

Section 9, which deals with forfeiture privileges in the following manner:

"Should the member, prior to and including the sixth monthly installments, fail to pay any of. the aforesaid installments when due, for a period of one month after they become due, and the member does not avail himself of the privilege of suspension of payments granted in section 8 hereunder, then this contract shall, at the option of the trustees, be wholly null and void and of no effect, and. shall be canceled on the books of the United Home Builders of America for nonpayment of monthly installments hereon, and all payments made hereon shall be forfeited and the aggregate amount of such payments shall be retained by the United Home Builders of America as liquidated damages for nonperformance by the member of the terms and conditions of this contract and of the application therefor."

After the Home Builders went under the supervision of the banking and insurance department, the following indorsements were placed by that department upon the loan and home purchasing contracts issued by said Home Builders to its members:

"I, J. C. Chidsey, commissioner of insurance and banking for the state of Texas, do hereby certify that the form of contract designated class A, adopted by the United Home Builders of America, Dallas, Tex., on April 1, 1920, has been examined by me and found to be within the terms of the law, and is hereby approved.

"Witness my hand this the 5th day of May, A. D. 1920.

"J. C. Chidsey,
"Commissioner of Insurance and Banking."

"State of Texas.

"Department of Insurance and Banking.

"This contract is registered and approved securities equal to the legal reserve hereon are held in trust by the commissioner of insurance and banking of the state of Texas.

"J. T. McMillin,
"Commissioner of Insurance and Banking,"

—which were duly signed by the then commissioner of insurance and banking of the state of Texas.

Said Home Builders issued and sold approximately 25,606 of these contracts, and the purchasers thereof paid in or contributed to a common fund $10 each month upon each contract for an arbitrary face value of $1,000. This was the only source from which said Home Builders or its trustees received funds. Out of this number of contracts the company only made about 580 loans, totaling approximately $1,300,000, and, of the contracts sold, only about 1,800 ever matured in their regular order.

Acting under the directions of the trial court, the receiver gathered all outstanding claims against the Home Builders; such claims being represented only by the contracts sold by said Home Builders to purchasers denominated as members of said Home Builders. The trial court adjudicated all of such claims, totaling approximately $1,700,000, and held that each contract holder should share pro rata in the assets of said Home Builders, based upon the total amount contributed by him to its general treasury, which included all claims based upon contracts that had become forfeited under section 9, Id., of the contracts representing said claims.

On the 21st day of September, 1925, appellants T. M. Barlow, O. E. Womack, O. D. Aston, C. H. Orr, J. A. Smith, L. N. Brode, and A. B. Nixon, for themselves and those similarly situated, filed their motion to amend the judgment so adjudicating said claims, and to expunge therefrom all claims that had become forfeited under said section 9 previous to the appointment of the receiver, on the grounds that the holders of such claims were not entitled to participate in the

distribution of the assets of said company with the holders of claims that had matured, and claims that were in good standing but had not matured under the provisions of the contract issued by said Home Builders at the date of the appointment of said receiver; it being alleged in said motion:

"That the parties bringing this proceeding and those similarly situated for whose benefit, as well as for themselves, this action is brought, have at all times since their purchase of their contracts complied with the provisions of the contract issued to them, and have maintained their contracts in full force and effect to the date of the receivership and thereafter by making payments as they were required, and in accordance with said contracts. That the master in chancery and the judgment and orders of this court approving same have adjudicated all contract holders to share pro rata in the assets of the estate, irrespective of whether or not they have complied with the contract provisions or .have forfeited their rights thereunder by reason of failure to so comply. * * * That there have been filed herein approximately 9,000 claims by contract holders or purported contract holders, many of whom have forfeited all rights under the provisions of their contract prior to the receivership, and many of whom had failed to pay or make sufficient monthly payments on their contracts to have any value therein."

On the 10th day of October, 1925, said motion was duly heard by the trial court and judgment rendered thereon, in part as follows:

"The court being of the opinion that all of the contract holders in said United Home Builders of America should share pro rata in the receivership assets, regardless of the number of payments made by the respective contract holders, regardless of whether the terms of their contracts have been complied with, for the reason that the business of the United Home Builders of America was one contrary to public policy, and the contracts with the partners or members thereof are void because contrary to public policy.

"It is therefore the order, judgment, and decree of this court in conformity with the orders, judgment, and decrees heretofore made adjudicating claims herein, that all claims filed herein by contract holders be and the same are hereby adjudicated as of equal standing and to share pro rata in the receivership assets, regardless of the number of payments made by the respective contract holders, or whether his contract had been forfeited by him under the terms thereof prior to the date of the receivership, and that each and every contract holder is entitled to the recovery of the money paid by him in so far as the receivership assets will reimburse him, and that the provisions of the contract are of no force and effect."

From this order appellants duly prosecute this appeal, and present same on the following propositions, supported by proper assignments of error:

(a) "No rights of innocent third parties intervening the contracts between the partners should be enforced and the court of equity, having taken control of said business for the benefit of its contract holders and for the protection of their rights, should not override the contracts made between the parties."

(b) "The contracts of United Home Builders of America, being directly authorized by law, cannot be contrary to public policy; the Legislature of the state having declared the policy with reference to said contracts and the operation of said business."

. It is conceded by the parties to this appeal that the effect of the common-law trust agreement under which the Home Builders operated was to create a copartnership between the original parties to said agreement, and that all persons became members thereof who purchased contracts through which the Home Builders transacted its business. The terms and provisions of the trust agreement justify the interpretation thus placed by the parties upon the effect of said instrument, and finds approval by this court. Wells v. Mackay Tel. Cable Co. (Tex. Civ. App.) 239 S. W. 1006; Harvey Company, Ltd., et al. v. Braden (Tex. Civ. App.) 260 S. W. 655; McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 699; Nini v. Cravens (Tex. Civ. App.) 253 S. W. 587; .Thompson v. Schmidt et al. (Tex. Sup.) 274 S. W. 554.

[1] The business that said Home Builders transacted was authorized by said Act of the 1st Called Sess. 34th Leg. 1915, p. 5, and the plan upon which same was conducted, as evidenced by the terms of its contracts issued to members, was in accordance with the provisions of said act and the amendment thereto. Therefore neither the business engaged in nor the contracts made in reference thereto by said company were void on the ground of being contrary to the public policy of this state. Sections 1, 3, 4, and 28, Act 1st Called Sess. 34th Leg., supra.

[2] By this act, the state, through its duly constituted lawmaking power, declared what should be the policy of the state in reference to the business that was conducted by the Home Builders, and also the type and character of corporation or organization that should have the right to carry on and conduct same. Therefore the business conducted by said Home Builders did not contravene public policy in any respect. This holding is not only supported by but warranted by the opinion in the case of People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, in which it is held that:

"The term 'public policy' is frequently used in a very vague, loose, or inaccurate sense. The courts have often found it necessary to define its judicial meaning, and have held that a state can have no public policy except what is to be found in its Constitution and laws; * * * therefore, when we speak of the public policy of the state, we mean the law of the state, whether found in the Constitution, the statutes, or judicial records."

See, also, Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 70 F. 201, 17 C. C. A.

62, 30 L. R. A. 193; Swann v. Swann (C. C.) 21 F. 299, in which it is held:

"The only authentic and admissible evidence of the public policy of a state on any given subject is its Constitution, laws, and judicial decisions. The public policy of a state, of which courts take notice and to which they give effect, must be deduced from these sources."

See, also, Varn v. Gonzales (Tex. Civ. App.) 193 S. W. 1132; Willys-Overland Co. v. Chapman (Tex. Civ. App.) 206 S. W. 978.

[3] The contracts as entered into being valid, it is not within the province of a court to strike down the provisions representing the agreements between the parties, and thus impose burdens that did not rest upon the parties as they bound themselves, and to destroy rights that existed perforce of the terms of the contracts willingly entered into by the parties, and which bore equally upon all alike. 'It is not by the provisions of the contracts in any respect that any advantage was secured to one member of the company over another member, or that created a preference in any respect in favor of one as against another member of the Home Builders. It is not within the prerogative of a court to restore a contract that has become valueless through the operation of its terms which the parties had lawfully assumed to comply with. Whether or not it was within the power of the parties holding the contracts, that had become valueless on account of having been forfeited through failure to make the payments necessary to mature same, to have performed the burden of the obligation assumed by them in this respect, the law makes no provision whereby relief can be granted on account of such misfortune, but is content to require that a contract be fairly entered into, and that its terms and provisions are such as should be recognized and enforced by law.

As revealed by the statement of facts, the Home Builders were under the supervision of the banking and insurance department of the state in compliance with the act of the Legislature authorizing its existence, and its contracts were approved and bear the seal of the commissioner of insurance and banking in accordance with the provisions of said act.

[4-6] We have carefully considered the validity of the act in the light of the Constitution, and have failed to find that any of its terms were violative of any of the provisions of our Constitution. The existence of the Home Builders was authorized by a valid statutory enactment. The contracts issued by the Home Builders were approved by a public official of the state, and subject to his supervision by the law giving the company a right to exist. Therefore it cannot be said that such contracts are contrary to public policy merely because the business may have been unsuccessful, or because through the gross mismanagement of its trus-

tees it was necessary to place it in the hands of a receiver for the protection of its contract holders. As shown by the record in this case, no innocent third parties were before the court complaining that they had been injured or damaged by reason of the character of the business or the contracts between the partners engaged therein. Therefore, since all the parties before the court are partners, who dealt with each other with full knowledge of the law, and who elected to assume the obligations and duties imposed by their own contractual relationship, courts are not at liberty to strike down such agreements and judicially make contracts for them which were never within their contemplation. As above stated, the laws of the state of Texas at time the contracts were made approved them. However, it is true that law no longer exists, having been repealed by Act 38th Leg. (Acts 1923, p. 336), which provided a method for the liquidation of companies created and existing under the act so repealed, giving such companies ten years within which to liquidate, and providing that until their liquidation they should remain under the control of the commissioner of insurance and banking and should not sell any further contracts or receive any further payments. The act repealing the old law did not invalidate the contracts theretofore made, nor does it provide that the liquidation shall be in any other way than as the contracts provide. It is our opinion that the court erred in refusing to grant the prayer of appellants' motion to reform the judgment as therein requested.

It is therefore ordered that the order and judgment of the trial court, entered on said motion to reform the judgment of that court, be and the same is hereby reversed and said cause remanded to the trial court, with instructions that the respective contracts between the parties be enforced in so far as the funds are available according to their terms, and that the receiver be instructed to pay the proceeds arising from property constituting the estate of said Home Builders of America to the contract holders in said company who, under the provisions of their contracts, are entitled thereto, and that all claims filed by persons who have failed and refused to make payments in accordance with the contract provisions in sufficient number to have surrender value therein, save and except those who were prevented from so doing by the receivership proceedings, be expunged, to the end that the funds now in the hands of said receiver, or which may be received by him as receiver of the United Home Builders of America, shall be prorated between the holders of contracts that have become matured according to the terms and provisions of such contracts, and the holders of contracts on which payments had been made for the purpose of maturing same, and were in good standing at the time of the

appointment of the receiver, and to the members whose contracts had matured prior thereto, and who had received a paid-up, nonparticipating certificate in lieu of the matured contract held by such member.

Reversed and remanded, with instructions.