### ABERNATHY et ux. v. WRIGHT.
### (No. 10135.)

Court of Civil Appeals of Texas. Dallas.
March 17, 1928.

1. **Building and loan associations ⬤⇒26—Contract referred to in trust declaration under which loan association operated held part of declaration as though copied therein (Acts 34th Leg. 1st Called Sess. [1915] c. 5, §§ 4, 28).**

Where declaration of trust under which cooperative loan association operated in accordance with Acts 34th Leg. 1st Called Sess. (1915) c. 5, §§ 4, 28, provided that trustees should hold all money collected from members and loan same to members on terms set out in home-purchasing contracts, and do all things authorized and required of them by said contract, terms and conditions of home-purchasing contracts became part of declaration of trust as though literally copied therein, and governed acts and conduct of trustees in reference to making loans to contract members.

2. **Building and loan associations ⬤⇒33(5)— Home-purchasing contract by loan association providing for payments on money borrowed, and for bonus to member surrendering contract, held not usurious (Acts 34th Leg. 1st Called Sess. [1915] c. 5, § 4; Rev. St. 1925, art. 5069).**

Home-purchasing contracts issued by cooperative loan association, providing for payments of monthly installments thereon for loans to members from which contract member agrees to pay $1 a month on each $100 borrowed, plus 3 per cent. interest until paid, and providing that holder of contract might surrender same to association and receive face value plus bonus therefor, *held* authorized by Acts 34th Leg. 1st Called Sess. (1915) c. 5, § 4, and did not contain vice of usury as defined by Rev. St. 1925, art. 5069.

3. **Building and loan associations ⬤⇒33(5)— Bonus paid by loan company in acquiring necessary contracts for borrower, and deducted from loan, held not "interest" making contract usurious (Rev. St. 1925, art. 5069).**

Where matured home purchase contracts, which borrower from loan association was required to own to obtain loan, authorized holder to surrender contract and receive amount paid plus bonus, amount paid by association as bonus on contracts in acquiring contracts for borrower, which sum was deducted from amount of loan, did not represent "interest"

which would make loan usurious under Rev. St. 1925, art. 5069.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (on Money).]

**4. Building and loan associations** ⟳33(5)—Borrower could not be charged any greater sum than paid by loan association in acquiring contracts for borrower to enable him to obtain loan, but excessive charge was not interest making loan usurious (Acts 34th Leg. 1st Called Sess. [1915] c. 5, §§ 4, 28).

Where, as condition precedent to obtaining loan from co-operative loan association organized under Acts 34th Leg. 1st Called Sess. (1915) c. 5, §§ 4, 28, borrower purchased matured home-purchasing contracts from association providing for payments of bonus or profit on each contract to original holder, association was not authorized to charge borrower greater sum than in fact paid in acquiring contracts, and sum in excess of amount paid was improperly added to principal amount of loan, but, where not included as interest or intended to be charged as interest on account of loan, did not make loan usurious.

**5. Building and loan associations** ⟳33(5)—Charge for new business held improperly included in loan to borrower obtaining matured contracts of loan association, but did not make loan usurious.

Where defendant, who obtained loan from co-operative loan association, acquired matured contracts of association, no new contracts being issued as basis for loan, charge on account of new business was improperly included as part of loan, but, where not intended by either party as interest, did make loan usurious.

**6. Building and loan associations** ⟳34(8)—Borrower acquiring contracts to obtain loan from loan association held not entitled to amount paid by association for contracts which was not paid by borrower or included in notes for loan.

Where amount paid on home-purchasing contracts issued by co-operative loan association was repaid by association to holders of contracts on surrender of contracts to association, borrower purchasing contracts to obtain loan from association contracted to repay to association amount of contracts as consideration for same, and since amount was not included in notes of borrower for loan as principal or paid by borrower, borrower was not entitled to receive such amount from association as part of loan, which borrower would have had right to receive if amount of contracts had been included in notes.

**7. Building and loan associations** ⟳33(5)—Borrower's agreement to pay principal and bonus on contracts of loan association acquired to obtain loan held not to involve payment of interest for money as regards claim of usury.

Where borrower to obtain loan from co-operative loan association purchased matured contracts of association on which association was liable to original holders for amount paid and bonus, agreement whereby borrower contracted to pay amount of contract and bonus did not comprehend payment of any sum by way of interest for use of money as regards claim of usury, but only acquiring ownership of all rights under contracts, and was transaction involving purchase and sale of property right.

**8. Building and loan associations** ⟳26—Transfer by loan association to borrower of surrendered contracts of association transferred all ownership thereunder to borrower.

Where home purchasing contracts issued by co-operative loan association were surrendered to and settled for by association, association became owner and holder of contracts, and transfer of such contracts to borrower as prerequisite for obtaining loan from association transferred ownership to borrower with all rights and duties existing thereunder in favor and against original holders, who retained no further authority under contracts unless authorized and directed by association.

**9. Building and loan associations** ⟳26—Loan association held not prohibited from transferring home purchase contracts to nonmember borrower on surrender of same (Acts 34th Leg. 1st Called Sess. [1915] c. 5, as amended by Acts 35th Leg. 4th Called Sess. [1918] c. 45).

Home-purchasing contracts issued by loan association and Acts 34th Leg. 1st Called Sess. (1915) c. 5, as amended by Acts 35th Leg. 4th Called Sess. (1918) c. 45, *held* not to prohibit transfer and assignment of contracts to borrower, not a member of association, on surrender of contracts to association by original holders, and on transfer of contracts same were revitalized for all purposes.

**10. Building and loan associations** ⟳33(21)—Notes to loan association by borrower held not shown to be usurious.

In suit by receiver of co-operative loan association to recover on borrower's notes, evidence after deducting amount of profit charged by association in reselling its home-purchasing contracts to borrower from principal of loan, but including bonus paid in acquiring contracts transferred to borrower, indebtedness of borrower paid by association, and charges for transaction, *held* to show that notes were not usurious.

**11. Building and loan associations** ⟳34(2)—Payments directed on original note, after transfer of same to loan association and execution of renewal notes, should have been credited on renewal notes.

Where borrower executed notes to co-operative loan association for loan, in renewal of vendor's lien note executed by borrower to another, which note and vendor's lien securing same were transferred to association in consideration of loan, payments, though directed to be applied on original note, should have been credited on notes to association, since original note lost its vitality as collectible obligation on execution of new notes, and became only an adjunct through doctrine of subrogation to enforcement of new notes.

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Building and loan associations ⊜⇒42(16)— Admission of payment without stating time or amounts raised presumption of payments on notes sufficient to discharge monthly·installments at maturity.**

Where notes on which receiver sued were in renewal of original note transferred to loan association and payable in fixed monthly installments with interest on each installment from maturity until paid, admission by loan association, to whom renewal notes were executed, of payment, without statement as to dates of payment or of amounts in which it was made, raised presumption that payments were made at such times and in such amounts as to have at maturity discharged monthly payments.

**13. Building and loan associations ⊜⇒42(10)— Borrower not in arrears on monthly installments on notes to loan association held liable only for legal interest from date of appointment of receiver for loan association.**

Where no monthly installment was in arrears on notes given to loan association when receiver was appointed for loan association, and no liability for 10 per cent. interest provided in notes had matured on any installment, interest could only be charged on indebtedness at legal rate of 6 per cent. per annum from date of receiver's appointment.

**14. Building and loan associations ⊜⇒42(10)— Amounts improperly added in notes sued on and interest thereon held properly allowed in suit by receiver as credits as of dates notes were executed.**

Where interest was added in notes due loan association on amounts improperly included in notes, trial court, in suit by receiver, properly allowed sums improperly added and interest thereon as credits as of dates notes sued on were executed.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by G. G. Wright, receiver of United Home Builders of America, against M. G. Abernathy and wife. Judgment for plaintiff, and defendants appeal. Corrected and affirmed.

C. A. Leddy, of Austin, for appellants.

John W. Pope and J. Lee Zumwalt, both of Dallas, for appellee.

VAUGHAN, J.　G. G. Wright, the duly qualified and acting receiver for the United Home Builders of America, brought this suit against the appellants, M. G. Abernathy and wife, Mollie D. Abernathy, to recover as such receiver on eight certain promissory notes, executed and delivered by appellants to said United Home Builders of America, briefly described as follows (each dated May 14, 1921): Note No. 1, $181.88 each month, aggregating $2,182.50; note No. 2, $177.38 each month, aggregating $2,128.50; note No. 3, $172.88 each month, aggregating $2,074.50; note No. 4, $168.38 each month, aggregating $2,020.50; note No. 5, $163.88 each month, ag-

gregating $1,966.50; note No. 6, $159.38 each month, aggregating $1,912.50; note No. 7, $154.88 each month, aggregating $1,858.50; note No. 8, $154.30 each month, aggregating $154.50—aggregating the sum of $14,298, said sum representing $12,750 as principal, and $1,548 interest at the rate of 3 per cent. per annum to maturity, and to foreclose a deed of trust lien created and existing on certain real estate to secure the payment of said notes, "the south three-fourths of lot No. 11 in block 16, of the city of Breckenridge, Stephens county, Texas, same being 75 feet north and south by 50 feet east and west."

For convenience, the United Home Builders of America will from now on be referred to as Home Builders.

Of the defenses urged by appellants, it is only necessary to note that of usury and payments presented by their answer. As to said defenses, it was alleged that the notes sued upon represented a loan made to appellants by the Home Builders, and that said notes were usurious in that they were required to execute same in the sum of $14,298, and that they only received out of the proceeds of said loan the sum of $8,850, making $5,448 interest upon $8,850 for the length of time said loan of money was made, as set forth in appellant's petition, and that said interest charge constituted a greater rate of interest than allowed by law, in that the interest charged on the sum of money so loaned appellants was in excess of 10 per cent. per annum for the money paid to and actually received by appellants, and that, by reason of said usury, no interest could be recovered on said sum of $8,850, and that appellants were entitled to have credited on said sum of $8,850, the amount of money actually loaned them, the sum of $5,006.24, which they had paid thereon. Appellants further alleged that all of the sums retained out of said loan were retained by the Home Builders as compensation for the use of said money, and were attempted to be covered up by deductions which the said Home Builders were not authorized to make from the face of said loan.

Appellants further alleged that they desired to obtain a loan from said Home Builders, and that the trustees in charge of the operation and business affairs of said Home Builders represented to them that the loan desired would be made to them for an interest charge of 3 per cent. per annum; that the total amount to be paid by appellants as interest would be 3 per cent. per annum on the amount appellants·desired to borrow; that, as a prerequisite to making said loan, they demanded that appellants purchase certain contracts issued by Home Builders, called "Home Builders purchasing contracts," and represented that the amount of money deducted for the payment of said stock would be credited on the principal of said loan, but that

in truth and in fact no part of the amount demanded as the purchase price of said contracts was credited on said loan; and that, by reason thereof, said contract was and is usurious, and appellants are entitled to have all sums paid by them credited on the principal of said loan; and that appellee was only entitled to recover the sum of $8,850, less the amounts paid by appellants since the date of the making of said loan.

The trial court, at the close of the evidence, instructed the jury to return a verdict in favor of appellee against appellant M. G. Abernathy personally for the sum of $11,-440.93, with 6 per cent. interest from the 23d day of March, 1927, and against appellants, foreclosing the deed of trust lien held by said Home Builders to secure the payment of said indebtedness. From the judgment rendered on said instructed verdict in favor of appellee, appellants duly prosecuted their appeal, presenting in support of same but two questions—that of usury and payments.

The Home Builders was a co-operative loan association, founded upon a declaration of trust, and operated under the supervision of the state department of insurance and banking, the holders of contracts issued by said association becoming members thereof, and all of its members occupying the position as members of a partnership. Barlow v. Wright (Tex. Civ. App.) 279 S. W. 593. The terms and provisions of said declaration of trust were in harmony with the terms and provisions of the Act of First Called Session Thirty-Fourth Legislature 1915, c. 5, p. 5, regulating the business of co-operative savings and contract loan companies, and as amended by Acts 1918, Thirty-Fifth Legislature (4th Called Sess. c. 45), and from the ——— day of May, 1920, operated under the supervision of the state department of insurance and banking until said Act of 1915, Thirty-Fourth Legislature, First Called Session, c. 5, and amendments thereto, were repealed by Act of Thirty-Eighth Legislature, Regular Session, 1923, c. 157, p. 336, which became effective June 13, 1923. Under the provisions of section 4, First Called Session Thirty-Fourth Legislature, c. 5, p. 5, the Home Builders was authorized:

"To engage in the business of issuing contracts or agreements, whether in the nature of bonds, debentures, certificates, or otherwise, providing for the redemption or for the fulfilling of such contracts or agreements by the accumulation of a fund or funds by the contributions made by a subscriber to or the holders of such contracts or agreements; or providing for the maturing or fulfilling of such contracts or agreements in the order of their issue or in series or in some other fixed or arbitrarily determined order or manner; or providing for the payment of moneys or the granting or giving of any consideration of any money or personal property, real or mixed, greater in value or represented to be greater in value than the amount paid in upon such contracts or

agreements, together with the actual net earnings accrued and accumulated thereon; or providing for the loaning of the funds contributed by the subscribers to or the holders of such contracts or agreements to such subscribers or holders in any fixed or arbitrarily determined order or manner; or for the making of loans or advance from such funds to or for such subscribers or holders to be repaid in installments; and shall have the right to place or sell bonds, certificates or debentures on the partial payment or installment plan."

Under section 28 of said act, the Home Builders, as a co-operative association, was governed by the provisions of said act, having complied with requirements of said section 28 by filing with the commissioner of insurance and banking a certificate accepting the provisions of said act. It is not contended by appellants that the plan under which the Home Builders was authorized to conduct its business, as delineated in declaration of trust, its purchasing contracts class A, and as authorized to be conducted under the provisions of said Act of 1915, Thirty-Fourth Legislature, First Called Session, c. 5, made the contracts issued by said Home Builders inherently usurious, but that the particular transaction had by said Home Builders with appellants in the making of the loan, out of which originated the notes sued upon, was usurious, in that appellants only received on account of said loan transaction and of the principal recited in the notes sued upon the sum of $8,850 for the use of which sum there was included as a part of the principal of said notes the sum of $3,750 as bonus charged appellants by said Home Builders at the rate of $250 on each one of the fifteen contracts on which said loan was made, and the additional sum of $150 included in said notes as a part of the principal thereof, as an amount due the said Home Builders on account of new business, being a charge made for the issuance of the fifteen contracts at the rate of $10 per contract, when, in fact, no new contracts were issued to appellants; that said sums of $3,750, $150, and the sum of $1,548 included in said note as interest at the rate of 3 per cent. per annum to maturity, constituted a greater rate of interest than 10 per cent. per annum for the use of said sum of $8,850 for the period of time said sum of $8,850 was loaned to appellants. The fifteen contracts involved in this litigation had been duly issued by the Home Builders to original purchasers, who matured same by the payment of fifteen monthly payments of $10 per month on each contract, aggregating the sum of $2,250. This matured said contracts for a loan, or to be surrendered by the respective owners to the Home Builders and to demand and receive the amount of money that had been paid in to mature said contracts, plus the sum of $150 on each contract so matured and surrendered, denominated a bonus. The holders of these contracts availed themselves of the option to surrender

said contracts, and said cash settlement was made.

[1] By section 2 of said declaration of trust, the trustees agreed to hold in trust all money collected from the contract members and to loan same to the members upon the terms and conditions set out in said association's 3 per cent. loan and home-purchasing contracts, and further agreed to do all things authorized and required of them by said contract, and in the articles of said declaration of trust. The terms and conditions of said home-purchasing contracts, by the language of said section 2, became as much a part of said declaration of trust as if literally copied therein, and governed the acts and conduct of the trustees of said association in reference to the making of loans to contract members, and prohibited the trustees from making loans to others than contract members, or to members upon any other terms and conditions than as set out in said home-purchasing contract. Under the terms and provisions of said purchasing contract issued as class A, the face value of same was $1,000, and was to be issued in consideration of the payment of $10 as membership fee and a further payment of a monthly installment of $10 on the contract, on or before the 15th day of each succeeding calendar month after the date of same until a loan had been secured thereon in accordance with the following terms and conditions, viz.:

"When the contract member has paid the required installment for six consecutive months, he shall be entitled, as conditioned herein, to receive a loan out of the loan or trust fund equal to the face value written herein, provided his contract has been reached and funds accumulated for a loan in its regular numerical order, as provided for in sections 1, 2, 3 and 4" of said contract; that, "after the loan has been made, the contract member * * * agrees to pay $1.00 a month on each $100 borrowed, plus 3% interest until the full amount of principal and interest has been paid."

Guaranteed investment feature:

"Should the contract member not desire a loan when notified that the loan is ready under the terms of this contract, or in lieu of any other option offered herein, he may surrender this contract to the trustees of the United Home Builders of America within 30 days from the time written notice is given him or her, and receive therefor on each $1,000 face value thereof all the money paid by the contract member in monthly installments on this contract, and in addition thereto he will be paid a bonus or profit of $150. * * * Or, if the contract member prefers, he may sell this contract to any other person or persons, and, if not in arrears, have it transferred on the books of the United Home Builders of America by paying a transfer fee of 10¢ on each $100 covered by this contract."

[2] It is clear that the above-quoted terms and provisions dealing with the issuance of contracts, the maturing of same, the options

to be exercised, the benefits to accrue to contract members, the making of loans by said association, and the payments to be made by its members, viz. contract holders, were clearly within and authorized by the provisions of section 4, Acts First Called Session, Thirty-Fourth Legislature, supra, and that the form of contract issued by Home Builders within its own terms did not contain the vice of usury. Abilene Christian College v. Wright (Tex. Civ. App.) 1 S.W.(2d) 720; V. E. & H. T. Shipman v. G. G. Wright, Receiver, 3 S. W. (2d) 519, decided by this court January 28, 1928, opinion by Mr. Justice Looney. As defined by article 5069, R. C. S. 1925, "usury" is interest in excess of the amount allowed by law, and "interest" is .the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money, and "conventional" interest is that interest which is agreed upon and fixed by the parties to a written contract not to exceed 10 per cent. per annum. Plain, accurate, and specific language, leaving no room for doubt or uncertainty as to what is meant by the terms "interest," "usury," and "conventional interest." The character of contract made and entered into by and between the Home Builders and appellants being one authorized by law, and not within its own terms usurious, the vice of usury must have its existence in an interest rate charged in excess of the amount allowed by law for the use, forbearance, or detention of money. Appellants admit that they received and should account for as principal included in the notes sued upon the sum of $8,850, and earnestly contend that the following amounts included in said notes as principal, viz.: $3,750 bonus, and the $150 charged for new business—were not properly included in said notes as principal, and did not in fact constitute any part of the principal of said notes, but were included therein as compensation for the use of $8,850, and was a charge made as interest on said sum of money in fact so loaned, and that said sum of $3,900, together with the amount of $1,548 added in said notes as interest at the rate of 3 per cent. per annum, aggregating $5,448, was the amount of interest in fact charged, and amounted to more than 10½ per cent. per annum. If appellants' contention should be sustained as to said sum of $3,900, then the transaction would be usurious and void as to the interest, and all payments made as interest would be applied as credits on the principal sum of $8,850.

[3] The original purchasers of the Home Builders contracts involved respectively paid for the contracts issued to them fifteen installments at the rate of $10 per month, $150 for each contract, aggregating for said contracts, $2,250. As said contracts "matured," the contract member holding same had the right to exercise his option—either to surrender his contracts and receive in return the entire amount paid in by him to mature same,

plus $150 as bonus or profit on each contract, or to obtain a loan from said Home Builders on said contracts as authorized to be made by the terms and provisions above quoted, surrendering his right to receive the $150 bonus or profit on each of the contracts so surrendered. The holders of said contracts elected to and did surrender same to the Home Builders, and received the amount paid in to mature said contracts, to wit, $150 each, plus $150 bonus, or· a total sum of $300 per contract. The $150 paid by Home Builders as bonus on each one ef said contracts did not represent interest paid or the acquisition of anything except discharging its obligation and receiving in consideration for the money so paid the return of said contracts, with the right to reissue same to any one desiring to invest therein, or to use same as a basis for a loan on the plan, terms, and conditions that Home Builders were authorized to make a loan of money to one of its contract members. Abilene Christian College v. Wright and Shipman v. Wright, supra.

Appellant M. G. Abernathy, at the time he applied for the loan, was not a contract member, and was advised that a loan could not be made to him except on matured stock owned by him; that Home Builders had some matured stock that he could purchase and use for a loan, if he so wished, with the result that appellants purchased the fifteen contracts involved. The aggregrate principal of the eight notes sued on, to wit, $14,298, comprises the following items: $250 bonus or profits on each one of said contracts, paid by Home Builders on surrender of same after maturity, aggregating $3,750; draft drawn by Breckenridge State Bank & Trust Company, covering indebtedness of appellants and paid by Home Builders, $1,565; check to Cocke & Cocke to cover expenses incurred in making loans, $70; check to Home Builders to cover fees charged for transferring contracts, at 10 cents per hundred, $15; check to Home Builders to cover membership fee on fifteen new contracts, $10 each, $150; check to appellant M. G. Abernathy, $7,200; and $1,548, representing 3 per cent. interest from date to maturity of said notes, the sum actually representing the principal included in said notes being $12,750.

[4] As to the $3,750 included as bonus, the Home Builders only paid the sum of $2,250 to the contract members holding said fifteen contracts at the time of maturity and surrender of same to said Home Builders as bonus or profit due them under the terms and provisions of said contracts. Therefore the Home Builders was not authorized to charge appellants for said contracts on account of bonus paid by it a greater sum than was in fact paid. The evidence disclosed that Home Builders did not have the right to charge, for the property right represented by said matured contracts, the additional sum of $100

5 S.W.(2d)—13

per contract, oï a total sum of $1,500, representing thereby a profit on account of said transaction of $1,500 to said Home Builders. Therefore it is clear said sum of $1,500 so included in said sum of $3,750 was an unwarranted and improper charge and should not have been included as a part of the principal ˙sum of said notes. The trial court properly held that no recovery could be had for or on account of said sum of $1,500.

[5] As to the charge of $150 account of new business, the loan made to appellants was based upon the fifteen matured contracts acquired by them from the Home Builders, and no new contracts were issued as a basis for said loan; therefore the sum of $150, charged as for new business, was likewise an unwarranted and improper charge, and this amount the trial court properly rejected as part of the principal of said notes. ·

[6] As to ḷhe initial payment of $2,250, made by the prior holders of said contracts in order to mature same, and which sum was r̈eturned to the holders of said contracts on surrender of same to Home Builders, appellants legally contracted to repay to Home Builders said amount as part of the consideration to be paid for said contracts. This amount was charged against appellants as a matter of bookkeeping to keep account of the transaction, and appellants were given credit for said sum of $2,250 on the amount of the loan made· to them, but was not included in said notes as a part of the principal thereof. In other words, appellants did not pay to the Home Builders said initial payment of $2,250 in cash, and same was not included in said notes as principal; therefore, appellants were not entitled to ïeceive that amount in cash from the Home Builders which they would have had a right to had said sum been so included. That not being the case, appellants were in the identical situation, by .the transaction as it took place, as they would have been if they had paid said sum of money to the Home Builders, and, in the consummation of the loan transaction, had executed the notes sued on and had received Home Builders' check in the sum of $2,250 in repayment of said initial sum, or, if the amount of said initial payment had been included iň said notes as a part of the principal thereof, then appellants would have been entitled to have received from the Home Builders the payment of said sum of $2,250 in cash. Either method of handling the matter would have produced the same results, except that in the last one appellants would have paid interest on said amount as part of the principal of said notes. Appellants, under the transaction as negotiated and determined, not having paid said initial payment, nor same included as part of the principal of ṭhe notes, was not entitled to receive said suṃ from the Home Builders.

[7] In the purchase of said fifteen contracts, appellants contracted to pay as the purchase price thereof to the Home Builders,

the then holder and owner of same, the sum of $2,250, the initial payment that it had refunded in acquiring said contracts, and the additional sum of $2,250 paid by it as bonus or profit to the contract members surrendering said contracts after maturity. This agreement did not comprehend in any respect the payment of any sum by the way of interest for the use of money but the acquiring ownership of and all the rights attendant thereto by appellants of said contracts in consideration of the payment to the Home Builders of said sum of $4,500 that it had been out in obtaining possession of said contracts. This was but a transaction involving the purchase and sale of a property right. We find the following material facts to have been established, viz.: That said sum of $1,500 bonus to Home Builders as profit in the resale of said fifteen contracts, and the sum of $150, for new business, were erroneously and improperly included in and as a part of the principal of said notes, but were not included as interest or intended to be charged as interest by the Home Builders or contracted or intended to be paid by appellants as interest on account of the loan of money obtained by appellants from said Home Builders. And we further find that the following amounts alone constituted and were properly included in said notes as the principal thereof, viz.: $2,250 bonus or profit paid by the Home Builders on the surrender of said contracts after maturity; $1,565, representing amount of draft covering indebtedness of appellants paid by the Home Builders; $70 expense incurred in the closing of the loan to appellants; $15, representing fees charged for transferring the fifteen contracts at $1 each; and $7,200 cash received by appellants—making a total of $11,100.

[8-10] We find that, after the fifteen contracts involved had been surrendered to and settled for by the Home Builders, that said Home Builders became in fact the owner and holder thereof and caused same to be reissued, through proper transfer and assignment executed by the respective parties owning same at the time of surrender to appellants. We are of the opinion that, by the transfer of said contracts thus accomplished, appellants thereby became the owners and holders of same, with all the rights, obligations, duties, and privileges theretofore existing in favor of and against the original holders of said contracts, or their transferees. Of course, the holders who transferred and delivered the contracts to the Home Builders had no power or authority thereafter to assert any character of ownership, control or possession against the Home Builders, or in fact any one, unless such acts were authorized and directed by the Home Builders. The Home Builders did not have to resort to this meandering method to consummate the transfer and assignment of said contracts to appellants. The Home Builders was not inhibited by the terms of its home-purchasing contracts, or by any of the provisions of its declaration of trust, or the Acts of Thirty-Fourth Legislature 1915, First Called Session, c. 5, p. 5, from transferring and assigning the contracts involved to appellants. While the contracts passed into a dormant state on being surrendered to Home Builders, that state ceased to exist when the Home Builders caused same to be transferred and assigned to appellants. In other words, the contracts became revitalized for all purposes as the same existed immediately before being surrendered by the then holders to the Home Builders. Abilene Christian College v. Wright; Shipman v. Wright, supra. We hold that the vice of usury was not established, and overrule appellants' assignment of error in this respect.

As to the question of payments, the proof clearly established that the following payments were made and not taken into account by the trial court in directing the jury as to the amount of verdict in favor of appellee. This omission is easily accounted for, as the payments admitted were not specifically pleaded, either as to amount or date of payment. However, without discussing in detail the condition of the record in this respect, it suffices to say that what was revealed required said omitted payments to be credited to the notes sued upon, as the evidence did not show that the appellants were indebted to Home Builders on account of any other transaction obligating them to make payments of money that should not be applied to extinguish the indebtedness evidenced by said notes. It is revealed by the evidence that the eight notes were executed in renewal and in extension of one certain vendor's lien note of date April 15, 1921, in the sum of $15,000, executed by appellant M. G. Abernathy, payable to the order of one, W. C. Jackson, due on or before one year from its date, and described in a warranty deed executed by W. C. Jackson and wife, dated April 15, 1921, conveying to said M. G. Abernathy the identical property described in the deed of trust executed by appellants to secure the payment of the eight notes involved in this suit, and that in said deed of trust it was provided that:

"* * * The owners and holders of said above-described series of eight notes are hereby subrogated to the vendor's lien, the contract lien, and all other rights, titles, interests and equities of the vendors of said land, and the owners and holders of said vendor's lien note."

[11-13] We further find that said note for $15,000 and vendor's lien securing the payment of same was, on the 14th day of May, 1921, duly transferred and assigned by said Jackson to W. M. Webb and A. A. Cocke, trustees, of the Home Builders; that the consideration for said transfer and assignment was recited therein to be "$15,000, * * * paid by W. M. Webb and A. A.

Cocke, trustees of the United Home Builders of America"; that in fact the only consideration for the execution of said transfer and assignment was the loan of money made by said Home Builders to appellants, evidenced by the eight notes sued upon; that by letter of date July 14, 1922, from and signed by Home Builders, addressed to Benson & Dean, attorneys, of Breckenridge, Tex., and representing appellants in the matter of making payments on said eight notes, it, was stated and admitted that the following payments had been made on said eight notes, viz.: $225, July 14, 1922; $3,450 and $251.24 at some time prior to said date; that said payments were not but should have been applied as credits on the notes sued upon, even though, in making remittance, said payments had been directed to be applied to the note for $15,000, as that note lost its vitality as a collectible obligation on the execution of said eight notes, and became only an adjunct through the doctrine of subrogation, as to the lien securing the payment of same, to the enforcement of the collection of said eight notes. As said admission of payments came from the Home Builders, the then holders of the indebtedness against which same were to be credited, without statement as to the dates said payments were made, or in what amounts said sum of $3,450 had been made, the effect of said admission was that at some time prior to July 14, 1922, said payments were made. This admission was of material import. Said eight notes were payable in fixed monthly installments, and each contained the following provision: " * * * With interest on each installment from maturity until paid at the rate of 10% per annum. * * * " Under the above environments, said admission of payments can but give rise to the presumption that said payments were made at such times and in amounts as to have at maturity discharged the monthly payments that became due on said notes prior to the date of July 14, 1922. We find that other payments were made on said notes, as follows: August 7, 1922, $200; September 7, 1922, $180; November 18, 1922, $400; and February 12, 1923, $300—that the payments made before January 25, 1923, date receiver was appointed, aggregated $4,706.24, which paid all monthly installments up to and including July 14, 1924, plus $49.48. Therefore no monthly installment was in arrears when appellee was appointed receiver, and no liability for the payment of interest at the rate of 10 per cent. per annum from maturity of and on any monthly installment had accrued to the date of the appointment of receiver, or at any time thereafter, as, under the law, interest could only be charged on said indebtedness at the legal rate, viz. 6 per cent. per annum from the date of receiver's appointment. Shipman v. Wright, supra.

[14] In view of the fact that said sums of $1,500 and $150 were not properly included in said notes as principal, and interest on each at the rate of 3 per cent. per annum from date of notes to maturity was added in said notes, the trial court properly allowed said sums and the interest thereon added in said notes as credits as of date notes were executed. This left the sum of $11,100, representing the aggregate principal of said notes. Calculating interest on this sum from May 14, 1921, at the rate of 3 per cent. per annum, to January 25, 1923, date receiver was appointed, and interest thereon at the rate of 6 per cent. per annum from that date, and taking into account and allowing credits for the following payments, viz.: $3,450, $251.04 (as if made in amounts and on dates that would have paid installments as same matured necessary to have consumed said payments of $3,450 and $251.04), $225, July 14, 1922; $200, August 7, 1922; $180, September 7, 1922; $400, November 18, 1922; and $300, February 12, 1923—the amount due and unpaid on said notes March 23, 1927, date of judgment rendered by trial court, was $8,234.93, instead of the sum of $11,440.93, the amount of judgment appealed from. Because of this error in amount, said judgment is corrected so that same shall award appellee recovery for the sum of $8,234.93, with interest thereon from March 23, 1927, at the rate of 6 per cent. per annum, and all costs of court below; that, as corrected, said judgment is affirmed with cost of appeal adjudged against appellee as receiver.

Corrected and affirmed.